**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELISSA BALLAS,<br>Plaintiff,<br><br>v.<br><br>EQUIS RESEARCH,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil No.: 5:26-cv-01759-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.** **August 24, 2026**

## I. OVERVIEW

Plaintiff Melissa Ballas, brings discrimination, hostile work environment, and retaliation claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act ("PHRA") against her former employer, Defendant Equis Research, Inc. She also brings discrimination and retaliation claims under the Americans with Disabilities Act ("ADA"). Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's Motion is **GRANTED in part**.

## II. BACKGROUND[1]

Plaintiff, a White woman, began her employment with Defendant on August 21, 2023. *See* Compl. ¶¶ 4, 6 (ECF No. 1). She received top marks in her 2023 and 2024 annual performance reviews and was praised for exceeding expectations, leading an innovative team, and fostering an inclusive workplace culture. *See id.* ¶¶ 7-8. On October 28, 2024, Defendant promoted Plaintiff to PTC Generalist and Talent Partner. *See id.* ¶ 9. From approximately December 2024 through May

[1] The Court accepts Plaintiff's factual allegations as true, as we must at this early stage.

2025, Plaintiff managed both her own role and the responsibilities of a colleague, Tatiana Ramirez, while Ramirez was on maternity leave. *See id.* ¶ 10.

Several events and communications during her employment reflected racial hostility towards White employees. *See id.* ¶ 11. An external HR investigator retained by Defendant documented that Defendant's leadership was "not crazy about [W]hite people around here." *See id.* ¶ 12.[2] Multiple team members told the investigator about racial preferences in hiring and retention decisions. *See id.* ¶ 13. In an anonymous employee survey, employees urged Defendant to "stop hiring [W]hite people." *See id.* ¶ 14. As part of another White employee's formal performance review, that employee received a peer evaluation from a Latino employee that referenced the White employee's "white privilege." *See id.* ¶ 15. And when a qualified White candidate was selected for a Payroll/Benefits Manager position and subsequently rejected by leadership, Plaintiff's supervisor, Marisela Maldonado, received pushback and admitted during an HR team meeting that the candidate was rejected for being "older and [W]hite." *See id.* ¶ 16.

Additionally, Plaintiff personally experienced racial hostility. In or around January 2024, Plaintiff's department organized a DEI webinar from which Plaintiff was explicitly excluded. *See id.* ¶¶ 17-18. As documented in contemporaneous email communications, the webinar was designated for "practitioners of color"—described as "not for [W]hite folks" and intended to "decenter whiteness." *See id.* ¶¶ 18-19. Plaintiff reported this exclusion to Maldonado, who failed to take corrective action and instead offered to provide Plaintiff with "a synopsis . . . a bit of an update after" the webinar. *See id.* ¶¶ 20-21 (omission in original). On January 23, 2024, Plaintiff submitted a formal written complaint to Elis Ribeiro, Defendant's Chief Financial and

---

[2] The HR investigator also documented a "[f]ear of discrimination against someone who isn't [L]atino," but the Court is unsure what that is supposed to mean. *See* Compl. ¶ 12.

Administrative Officer, stating that her exclusion was "very hurtful and ma[de] [her] feel even less like [she] belong[ed] in [her] department." *See id.* ¶¶ 22-23.

Defendant represents that it decided to downsize the PTC team in September 2024. *See id.* ¶ 24. This is contradicted by Defendant promoting Plaintiff to PTC Generalist and Talent Partner on October 28, 2024—one month after Defendant's supposed downsizing determination and seven months before her termination. *See id.* ¶ 25. It is further undermined by the CEO's assurance, given during a department-wide downsizing meeting, that the PTC team would not be affected. *See id.* ¶¶ 25-26. Internal notes from the Chief Financial and Administrative Officer's meeting with the external investigator reference discussions of potentially restructuring the team, but do not mention eliminating the entire PTC team or Plaintiff's position specifically. *See id.* ¶ 27. Those notes instead reference a restructured teams of "HR Manager, HR Generalist, HR Coordinator." *See id.* ¶ 28.

On May 15, 2025, during a one-on-one meeting with HR contractor Alex Schwartz, Plaintiff disclosed her recent lupus diagnosis. *See id.* ¶¶ 29-30. She also asked about a promised coverage bonus that had not received. *See id.* ¶ 31. Exactly one week later, on May 22, 2025, Defendant terminated Plaintiff's employment. *See id.* ¶ 32.

Following her termination, Estefania Gonzalez, a Latina employee with no HR background, assumed Plaintiff's core job duties, including performance management responsibilities, which had previously belonged exclusively to Plaintiff. *See id.* ¶¶ 35-38. A text message from retained employee Tatiana Ramirez, dated June 5, 2025, confirmed that Gonzalez was to "start HR training soon" and would "be handling all the fun culture events, L&D and performance reviews soon enough." *See id.* ¶ 36. Gonzalez had been shadowing Plaintiff in the weeks preceding her termination. *See id.* ¶ 39. Plaintiff further alleges that Ramirez, who had been

flagged multiple times for poor performance and was on maternity leave from December 2024 through May 2025 (during which Plaintiff covered Ramirez's duties), was retained and tasked with training Plaintiff's replacement. *See id.* ¶¶ 40-43. Following Plaintiff's termination, Schwartz, the same HR contractor to whom Plaintiff had disclosed her lupus diagnosis, made disparaging remarks about Plaintiff to retained employees. *See id.* ¶¶ 44-45.

On or about November 14, 2025, Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC"), alleging discrimination based on race and disability, as well as retaliation. On January 9, 2026, fifty-six days after she filed the charge, the EEOC issued a Determination and Notice of Rights letter ("right-to-sue letter"), stating "[t]he EEOC [would] not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute." *See id.* Ex. 2 (ECF No. 1-4). The right-to-sue letter provided "official notice that the EEOC has dismissed [her] charge," and Plaintiff had ninety days to file suit. Plaintiff brought this lawsuit March 18, 2026—68 days later. Defendant moves to dismiss the Complaint. *See generally* Def.'s Rule 12(b)(6) Mot. to Dismiss Ballas's Compl. (ECF No. 11).

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted

unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV. ANALYSIS

### A. Racial Discrimination and Retaliation Under 42 U.S.C. § 1981 (Count I)[3]

To state a claim under 42 U.S.C. § 1981, a plaintiff must ordinarily show "(1) that [s]he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Cook v. Temple Univ. Hosp.*, No. 24-3713, 2026 WL 1228458, at *2-3 (E.D. Pa. May 4, 2026) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)). Because Plaintiff brings a reverse race discrimination claim as a White plaintiff, she "need not show she is a member of a minority group." *Ellis v. Bank of N.Y. Mellon Corp.*, 837 F. App'x 940, 941 n.3 (3d Cir. 2021) (citing *Iadimarco v. Runyon*, 190 F.3d 151, 158 (3d Cir. 1999)).

Defendant argues Plaintiff failed to plead that racial discrimination and retaliation were the but-for cause of her termination. *See* Mem. of L. in Supp. of Def.'s Rule 12(b)(6) Mot. to Dismiss Ballas's Compl. ("Def.'s Mem. in Supp."), at 3 (ECF No. 11-2) (citing *Comcast Corp v. Nat'l Assn. of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)). And by pleading "multiple independent causes-in-fact of a harm" and incorporating her allegations, Defendant contends that she is foreclosed from asserting a Section 1981 claim. *See id.* at 4-5. Defendant asserts that Federal

[3] Defendant did not raise these arguments as to Plaintiff's Section 1981 hostile work environment claim.

Rule of Civil Procedure 8(d) does not save Plaintiff because she did not plead in the alternative, and the inconsistent facts should be treated as judicial admissions and dismissed with prejudice. *See id.* at 5-6.

Plaintiff maintains that there can be multiple but-for causes, and "a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision." *See* Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Mem. in Opp'n"), at 5 (ECF No. 12) (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020)). Further, she asserts that Defendant's position "would break federal employment pleading," which routinely permits a plaintiff to bring several employment actions that each require but-for causation. *See id.* at 6. Plaintiff also claims that her pleading is acceptable under Rule 8(d), and construing her allegations as judicial admissions would make multi-theory pleading impossible. *See id.* at 7-8.

The Court agrees with Plaintiff.[4] While Plaintiff did not plead but-for causation, she did plead in detail the events that unfolded and that Plaintiff's harm was the "direct and proximate result" of Defendant's conduct. *See* Compl. ¶¶ 11-28, 46-61. Defendant's hyper-technical argument that Plaintiff did not plead but-for causation may be true, but the Third Circuit recognizes that allegations satisfying a proximate cause requirement will necessarily satisfy but-for causation. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 675 (3d Cir. 2016). Pleading multiple causes also is not fatal. It is true that *Comcast* held that "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *See Comcast Corp.*, 589 U.S. at 341. But just three months later, the Court explained that events often "have multiple but-for causes." *See Bostock*, 590 U.S. at 656. It is especially notable that Justice

[4] Plaintiff also points to *Williams v. Technology Mahindra (Americas) Inc.*, 70 F.4th 646 (3d Cir. 2023), but that case addresses whether a plaintiff in a ***class action*** must plead but-for causation on an individual basis. *See Williams*, 70 F.4th at 652. This is a single-plaintiff case.

Gorsuch authored both majority opinions in *Comcast* and *Bostock*. Moreover, as Plaintiff stated, Rule 8(d) "permits inconsistency in both legal and factual allegations," and the Court cannot construe her "first claim as an admission against another alternative or inconsistent claim." *See Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997). That is especially so where, as here, proving her claim requires "complex inquiries into the parties' intent." *See id.*

Because Plaintiff adequately pled but-for causation, and pleading inconsistently is permissible under the Federal Rules, Defendant's motion to dismiss Plaintiff's Section 1981 discrimination and retaliation claims is **DENIED**.

**B. Exhaustion of Administrative Remedies for Title VII and ADA Claims**

Before filing suit under Title VII or ADA, the plaintiff must satisfy the statute's charge-filing requirement. *See Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 544 (2019); *Simko v. U.S. Steel Corp*, 992 F.3d 198, 206–07 (3d Cir. 2021). Once the EEOC dismisses the charge or 180 days have passed, the plaintiff may file suit. *See* 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a) (referencing Section 2000e-5).

Defendant assumes that the EEOC issued its right-to-sue letter pursuant to 29 C.F.R. § 1601.28(a)(2). That regulation permits the EEOC to issue a right-to-sue letter before the 180-day expiration date when the aggrieved person requests the letter and the EEOC believes it cannot "complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." *See* 29 C.F.R. § 1601.28(a)(2).

The Court cannot arrive at that same conclusion. The Complaint and the right-to-sue letter, attached as an exhibit to the Complaint, in no way suggest that Plaintiff requested this letter. *See generally* Compl. *But see Prichard v. Long Island Univ.*, 2025 WL 2163390, at *1 (S.D.N.Y. July

30, 2025) (noting ***plaintiff requested*** right-to-sue letter before 180-day expiration date); *Leckrone v. Jost Chem. Co.*, 2026 WL 456754, at *1 (E.D. Mo.) ("The EEOC has ***granted your request*** that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed."). On a motion to dismiss, "the Court must take all well-pleaded allegations as true, interpret them in the light most favorable to the plaintiff, and draw all inferences in her favor." *Ishmael v. GM Fin. Inc.*, No. 2:22-CV-1095-JDW, 2022 WL 2073821, at *1 (E.D. Pa. June 9, 2022) (citing *Connelly*, 809 F.3d at 786). What Defendant asks the Court to do is draw an inference in its favor. That is impermissible.

Defendant refers the Court to *Prichard*, which relied on *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) in invalidating 29 C.F.R. § 1601.28(a)(2). But the Court is persuaded by another court, which found that it was unnecessary to decide its validity because the EEOC dismissed the charge. *See Leckrone*, 2026 WL 456754, at *4. Like the Plaintiff in *Leckrone*, Plaintiff provided the Court a right-to-sue letter that "facially states that the EEOC dismissed Plaintiff's charge." *See id.* Notably, *Leckrone* permitted the plaintiff's claim to survive despite the plaintiff requesting the right-to-sue letter. *See id.* at *1 (E.D. Mo.) ("The EEOC has ***granted your request*** that the agency issue a Notice of Right to Sue[.]" (emphasis added)).

Defendant's assertion that the EEOC did not investigate is also an inference the Court cannot make. The right-to-sue letter specifically states: "The EEOC ***will not proceed further*** with its investigation." *See* Compl. Ex. 2 (emphasis added). It is reasonable to infer that the EEOC conducted some sort of investigation before dismissing the charge.

Plaintiff herself complied with the plain text of the statute. She dual-filed a charge with the EEOC and PHRC on November 14, 2025. *See* Compl. ¶ 2. The EEOC issued its right-to-sue letter on January 9, 2026, stating it would "not proceed further with its investigation," dismissed her

charge, and advised she must file suit "**WITHIN 90 DAYS** of [her] receipt of EEOC's official notice of dismissal" or she would lose the right to sue. *See* Compl. Ex. 2 (emphasis in original). She complied with that directive by filing suit 68 days later. Because the EEOC dismissed the charge, Plaintiff complied with the charge-filing requirements, and Plaintiff timely filed this lawsuit, Defendant's motion to dismiss for failure to exhaust administrative remedies is **DENIED**.

**C. Hostile Work Environment Claims**

Plaintiff brings hostile work environment claims under Section 1981, Title VII, and the PHRA. Defendant argues these claims fail for two independent reasons: the Title VII and PHRA claims are untimely, and all three fail because the alleged conduct was not sufficiently severe or pervasive. Def.'s Mem. in Supp., at 12-14. The Court will address timeliness first, then turn to the merits.

**1. Timeliness Under Title VII and PHRA**

A plaintiff asserting a Title VII hostile work environment claim must file a charge with the EEOC within 300 days of the unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 164-65 (3d Cir. 2013). The PHRA imposes a shorter 180-day window. *See* 43 P.S. § 959(h); *Mandel*, 706 F.3d at 165. Plaintiff filed her charge on November 14, 2025. *See* Compl. ¶ 2. Accordingly, the 300-day lookback period for Title VII reaches back to January 18, 2025, and the 180-day lookback period for the PHRA reaches back to May 18, 2025.

Defendant argues that Plaintiff's termination is the only adverse event that occurred after January 18, 2025. *See* Def.'s Mem. in Supp., at 12. Plaintiff does not dispute this assertion. Rather, she contends that her Title VII and PHRA hostile work environment claims survive because her termination is a continuing violation. *See* Pl.'s Mem. in Opp'n, at 16 (citing *Hanafy v. Hill Int'l*,

*Inc.*, 669 F.Supp.3d 419, 432 (E.D. Pa. 2023)). Defendant counters that termination is a discrete act, which "cannot be aggregated under a continuing violations theory." *See* Def.'s Reply Mem. of L. in Further Supp. of its Mot. to Dismiss, at 6 (ECF No. 15) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)).

The Court agrees with Defendant. "[T]he continuing violation doctrine has no applicability to discrete acts such as termination." *Zankel v. Temple Univ.*, 245 F. App'x 196, 199 (3d Cir. 2007) (citation modified) (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 114 (2002)). Because Plaintiff's hostile work environment claims under Title VII and the PHRA cannot be saved by the continuing violation doctrine, and she has not alleged that any non-discrete acts occurred after January 18, 2025, Plaintiff's hostile work environment claims under Title VII and the PHRA are time-barred. Defendant's motion to dismiss these claims is **GRANTED** and these hostile work environment claims are **DISMISSED with prejudice**.

**2. Severity or Pervasiveness of Section 1981 Hostile Work Environment Claim[5]**

A plaintiff may bring a hostile work environment claim under Section 1981, "reasoning that such an environment can amount to a change in the terms and conditions of employment." *See Poteat v. CP Dev.*, No. 24-3290, 2026 WL 93129, at *2 (3d Cir. Jan. 13, 2026) (citation modified) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 263–64 (3d Cir. 2017)). To state such a claim, Plaintiff must show: "(1) intentional discrimination because of the plaintiff's race that (2) was severe or pervasive and that both (3) detrimentally affected the plaintiff and (4) would detrimentally affect a reasonable person in like circumstances, as well as (5) the existence of *respondeat superior* liability." *See id.* (citation modified) (quoting *Castleberry*, 863 F.3d at 263–64). The Court will focus on severity or pervasiveness, as that is the element Defendant challenges.

[5] Plaintiff's hostile work environment claim under Section 1981 is the only claim that is not time-barred. Thus, that is the only claim the Court will assess for severity or pervasiveness.

The distinction between severe and pervasive "means that severity and pervasiveness are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Castleberry*, 863 F.3d at 264 (citation modified). The Court must consider the "totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation modified) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)) (observing a supervisor using the n-word one time can be sufficient to state a hostile work environment claim). "Determining whether harassing conduct is sufficiently severe or pervasive is a highly fact-intensive inquiry," so "courts have shown a reluctance to dismiss a complaint at the motion to dismiss stage" based on severity and/or pervasiveness alone. *Ingram v. Vanguard Grp., Inc.*, No. CIV.A. 14-3674, 2015 WL 4394274, at *19 (E.D. Pa. July 17, 2015) (citation modified) (first quoting *Long v. Pizza Hut (Store # 635008),* No 03–0738, 2003 WL 23019186, at *4 (W.D. Pa. Nov.5, 2003); and then quoting *Grasty v. World Flavors, Inc.,* Civ. No. 11–1778, 2011 WL 3515864, at *9 n. 2 (E.D. Pa. Aug.11, 2011)); *see also Caldwell v. Nodiff*, No. CIV.A. 13-162, 2014 WL 641356, at *7 n.8 (E.D. Pa. Feb. 18, 2014) (same).

Defendant contends that Plaintiff's allegations are not sufficiently severe or pervasive. *See* Def.'s Mem. in Supp., at 14-15. But in support of that argument, Defendant cites all summary judgment opinions. *See id.* (citing *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023); *Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 439 (E.D. Pa. 2001); *Morales-Evans v. Admin Off. of the Cts. of the State of N.J.*, 102 F. Supp. 2d 577 (D. N.J. 2000); *Szyper v. Am. Med. Response Mid-Atlantic, Inc.*, No. 20-4642, 2021 U.S. Dist. LEXIS 230583, at *9 (E.D. Pa. Dec. 1,

2021)). That is not helpful in determining whether Plaintiff's claim should survive a motion to dismiss for failure to state a claim.

Plaintiff argues that her hostile work environment claim should survive a motion to dismiss, as the plaintiff's claim survived in *De Piero v. Pennsylvania State University*, 711 F. Supp. 3d 410, 422 (E.D. Pa. 2024). In *De Piero*, the Court recognized a viable hostile work environment claim where race-conscious trainings and administrative communications crossed the line into pervasive racial hostility. There, the plaintiff attended five trainings that "ascrib[ed] negative traits to [W]hite people or [W]hite teachers without exception and as flowing inevitably from their race." *See id.* at 423. Those trainings included an exercise where the Assistant Vice Provost for Educational Equity instructed non-Black faculty to "feel the pain" during a breathing exercise, the plaintiff's supervisor used "supposed examples of racist comments where every hypothetical perpetrator was [W]hite," and that same supervisor endorsed an event where the "facilitator condemned [W]hite people for no other reason than they spoke or were simply present." *See id.* at 423 (citation modified). The plaintiff alleged other incidents, including, but not limited to, receiving "multiple emails urging him to watch a video titled White Teachers Are a Problem" and the Director of Diversity, Equity, and Inclusion "calling on [W]hite people to feel terrible[] about their own internalized white supremacy." *See id.* at 416, 423 (citation modified). When the plaintiff expressed concerns to the Associate Director of the Affirmative Action Office, she told the plaintiff that "there is a problem with the [W]hite race," he "simply did not get it," and he "should continue to attend more workshops and trainings until the message sunk in." *See id.* at 423.[6]

[6] Though the plaintiff's hostile work environment claims under Section 1981, Title VII, and PHRA survived a motion to dismiss, the Court later granted summary judgment in the defendants' favor on the "severe or pervasive" element. *See De Piero v. Pa. State Univ.*, 769 F.

While Plaintiff's allegations are not as extensive as those in *De Piero*, she nonetheless pleads a widespread, workplace-wide pattern of race-based animus. Plaintiff alleges that multiple people have voiced concerns to an external investigator about racial preferences. *See* Compl. ¶ 13. The investigator documented that Defendant's leadership was "not crazy about [W]hite people around" there.[7] *See id.* ¶ 12. Employee surveys echoed these concerns, including calls to "stop hiring [W]hite people." *See id.* ¶ 14. These institutional attitudes manifested in specific personnel decisions, including a peer evaluation referencing an employee's "[W]hite privilege," and rejecting a qualified White candidate because she was "older and [W]hite." *See id.* ¶ 16. Those attitudes extended to Plaintiff personally by making her feel like she does not belong and being excluded from a diversity webinar that was designed to "decenter whiteness" and meant for "practitioners of color"—"not for [W]hite folks." *See id.* ¶¶ 17-18. And when she reported the incident to her supervisor, that supervisor failed to take corrective action. *See id.* ¶¶ 20-21.

Though "offhand comments and isolated incidents" are generally insufficient to state a claim for hostile work environment, *see Sharpe v. Primex Garden Ctr.*, No. CV 23-4843, 2024 WL 3161755, at *7 (E.D. Pa. June 25, 2024) (citation modified) (quoting *Watkins v. Pa. Dep't of Corr.*, 2023 WL 5925896, at *4 (3d Cir. Sept. 12, 2023) (not precedential)), Plaintiff's allegations, taken as true, demonstrate an environment where racial hostility was institutionalized, pervasive, and endorsed by leadership. Accordingly, Defendant's motion to dismiss Plaintiff's Section 1981 hostile work environment claim is **DENIED**.

---

Supp. 3d 329, 349-56 (E.D. Pa. 2025). The plaintiff has since appealed that order, and the Third Circuit held oral argument on the merits in March 2026. *See De Piero v. Pa. State Univ.*, No. 25-1952, Oral Argument Notification (3d Cir. Feb. 20, 2026) (scheduling oral argument on the merits) (ECF No. 61); *De Piero v. Pa. State Univ.*, No. 25-1952, Court Minutes (3d Cir. Mar. 18, 2026) (ECF No. 64). The appeal remains pending.

[7] Again, the HR investigator also documented a "[f]ear of discrimination against someone who isn't [L]atino," but the Court is unsure what that means. *See* Compl. ¶ 12.

**D. ADA Retaliation Claim (Count IV)**

"The ADA makes it unlawful for employers to discriminate against any employee who has opposed any act or practice made unlawful by the ADA or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute." *Steidle v. United States Liab. Ins. Co.*, 179 F.4th 193, 203 (3d Cir. 2026) (citation modified) (quoting 42 U.S.C. § 12203(a)). To state a retaliation claim, Plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal: (1) Plaintiff engaged in a protected employment activity under the ADA; (2) Defendant took adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse employment action. *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 500 (3d Cir. 1997); *see also Connelly*, 809 F.3d at 789. Defendant only challenges the third element, asserting that Plaintiff did not plead a protected employment activity. *See* Def.'s Mem. in Supp., at 14-15.

Plaintiff contends that she engaged in a protected activity when she disclosed her lupus diagnosis. *See* Pl.'s Br. in Opp'n, at 18. But that disclosure, without more, does not constitute "engaging in a protected activity." *See Leffert v. Walmart Inc.*, No. CV 23-2815, 2023 WL 8810790, at *3 (E.D. Pa. Dec. 20, 2023). Thus, Defendant's motion to dismiss Plaintiff's ADA retaliation claim is **GRANTED**, and the ADA retaliation claim is **DISMISSED without prejudice**.

**E. PHRA Claims**

Defendant moves to dismiss Plaintiff's PHRA claims on two separate grounds: Plaintiff failed to plead that Defendant employs four or more people in Pennsylvania, and Plaintiff failed to exhaust her administrative remedies under the PHRA. *See* Def.'s Mem. in Supp., at 15-16. The Court agrees that Plaintiff's PHRA claims must be dismissed, without prejudice, for failure to

exhaust her administrative remedies. *See Foley v. Drexel Univ.*, No. 22-1777, 2023 WL 3767744, at *6 (E.D. Pa. 2023) (dismissing unexhausted PHRA claims).

Plaintiff dual-filed her charge with the EEOC and PHRC on November 14, 2025. *See* Compl. ¶ 2. Because the PHRC has not dismissed her charge and it has not yet been a year since filing the charge, the PHRC currently has exclusive jurisdiction over Plaintiff's claim under the PHRA. *See Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, 537 F. Supp. 3d 852, 858 (E.D. Pa. 2020). The Court appreciates that Plaintiff had no choice but to file suit within 90 days of the EEOC's dismissal. Nonetheless, Plaintiff has failed to exhaust her administrative remedies under the PHRA. Defendant's motion to dismiss Plaintiff's PHRA claims is **GRANTED**. But because courts in this Circuit "take a flexible approach to PHRA exhaustion requirements," *see Dean v. Works*, No. CV 19-04266, 2019 WL 6828607, at *4 (E.D. Pa. Dec. 12, 2019), Plaintiff may amend her pleading once her claims are exhausted—provided that Plaintiff can satisfy the minimum employee count under the PHRA.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 11) is **GRANTED in part**. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge